1      UNITED STATES DISTRICT COURT
2         DISTRICT OF PUERTO RICO

3    TILSON ORTIZ-SANTIAGO,
4
5         Plaintiff,                          Civil No. 08-1097 (JAF)

6         v.

7    VAQUERÍA TRES MONJITAS, INC.,
8
9         Defendant.

10                    **OPINION AND ORDER**

11       Plaintiff, Tilson Ortiz-Santiago, brings this action against

12   Defendant, Vaquería Tres Monjitas, Inc., alleging failure to promote

13   in violation of the Age Discrimination in Employment Act ("ADEA"), 29

14   U.S.C. §§ 621-34, and Puerto Rico Law No. 100, of June 30, 1959, 29

15   L.P.R.A. § 146 (2001) ("Law 100"); retaliatory suspension in

16   violation of the ADEA, 29 U.S.C. § 623(d); and failure to pay

17   vacation leave in violation of Puerto Rico Law. (Docket Nos. 1, 32.)

18       Defendant moves for summary judgment under Federal Rule of Civil

19   Procedure 56(c) (Docket No. 21), Plaintiff opposes (Docket No. 32),

20   and Defendant replies (Docket No. 46).

21                            **I.**

22               **Factual and Procedural Synopsis**

23       Unless otherwise indicated, we derive the following factual and

24   procedural summary from the pleadings and depositions on file.

25   (Docket Nos. 1, 21, 22, 28, 32, 37, 45, 46, 54, 56.)

Civil No. 08-1097 (JAF)                                              -2-

Defendant is a Puerto Rico corporation that processes and distributes dairy products. Defendant and the Federación Central de Trabajadores ("the Union") entered into a Collective Bargaining Agreement ("CBA") valid from June 1, 2005, until May 31, 2008. The terms of the CBA apply to "drivers-salesmen and their assistant[s]." (Docket No. 37-2.)

Under Article VIII of the CBA, "any grievance or complaint relating to management or the interpretation of clauses within [the CBA] which in some way affect employees covered under [the CBA] . . . must be submitted or presented" through a specified grievance and complaints procedure. (Id.) Excluding any job discrimination grievances or complaints,[1] this "shall become the exclusive means for resolution of any complaint and/or agreement." (Id.)

Article XII of the CBA also provides that promotions should be made "in accordance with seniority criteria and competency at work, in terms of performing [sic] within stated classification at the company's discretion." (Id.) Thus, Defendant is required to weigh both an employee's seniority and qualifications when the employee requests a promotion.

---

[1] Although the certified translation in the record states that job discrimination grievances or complaints "shall be deemed as a grievance or complaint" for purposes of the CBA (Docket No. 37-2 at 15), this is an inaccurate translation of Docket No. 22-3. We have annexed an accurate translation to this Opinion and Order. We caution Defendant to exercise care in ensuring that submissions before the court are accurate and complete.

1     Article XVI of the CBA provides for the accumulation of vacation
2   leave. (Id.) Employees that have been working for more than five
3   years accumulate one and five-twelfths of a day per month for those
4   months in which they work for at least one hundred and fifteen hours.
5   (Id.)

6     Plaintiff is a resident of Bayamón who was born in 1938. He has
7   been continuously employed by Defendant since 1990. In 2006, he was
8   a substitute salesman for District 1, which includes delivery routes
9   in San Juan and parts of Carolina. A district is composed of various
10   routes within a determined geographic area. Substitute salesmen
11   assist vendors in their daily routes and must fill in when a vendor
12   is absent. They earn no commission on the milk they sell. Plaintiff
13   either enjoyed vacation leave or received payment in lieu of vacation
14   for the years 2000 to 2004 and the year 2006. There is no information
15   in the record regarding Plaintiff's vacation leave in 2005.

16     On May 2006, the salesman for route 446, Edgardo Ramírez, was
17   suspended from his employment as a result of an incident with a
18   client. Route 446, located within District 2, includes deliveries in
19   Bayamón. District 2 also includes delivery routes in Toa Alta, Toa
20   Baja, and Corozal. On May 15, José Concepción, a substitute salesman
21   in District 2, requested route 446. Concepción had been employed by
22   Defendant since 2001 and was in his late twenties.

23     Under the CBA, Defendant is required to "notify vacant positions
24   to any interested contracting unit personnel who so desires to

1    request same, through the bulletin board." (Id.) However, as had

2    become common practice at the company, the vacancy was not announced

3    on the Defendant's bulletin board. Plaintiff had previously been

4    awarded a position as salesman without the position being properly

5    announced.

6         On June 2, 2006, route 446 was assigned to Concepción. On

7    June 5, Plaintiff verbally requested that his supervisor, Carlos

8    Piñeiro, assign him to route 446. (Docket No. 45-2.) Piñeiro asked

9    Plaintiff to submit the request in writing. Plaintiff requested the

10   position in writing on June 6.

11        On June 7, 2006, Piñeiro sent Plaintiff a letter informing him

12   that the salesman position had already been filled and that Plaintiff

13   would be considered for another route, should one become available

14   in the future. (Docket No. 37-6.)

15        On June 23, 2006, Plaintiff filed a charge before the Equal

16   Employment Opportunity Commission ("EEOC"), claiming that Defendant

17   awarded the position of salesman on route 446 to Concepción because

18   he was younger, in violation of the ADEA. (Docket No. 22-15.)

19   Plaintiff has not attempted to resolve his failure to pay vacation

20   leave claim through the CBA's grievance and complaints procedure.

21        On January 22, 2007, Plaintiff received a letter from José

22   Berríos, the District 1 Route Supervisor, stating that Plaintiff had

23   failed to follow his assigned route four days earlier. (Docket

24   No. 37-11.) On January 23, Plaintiff talked to Berríos and Piñeiro

1    about the letter. During the conversation, Piñeiro thought he heard

2    Plaintiff verbally threaten Berríos. Piñeiro immediately cut

3    Plaintiff off and suspended him for three days. Plaintiff alleges,

4    however, that he was not threatening Berríos and that the suspension

5    was a misunderstanding, as Piñeiro did not allow Plaintiff to

6    complete his statement. Later that same day, Berríos filed criminal

7    charges against Plaintiff over the alleged threat (Docket No. 54-8)

8    and Plaintiff filed a sworn statement before the EEOC, asking to

9    amend his charge against Defendant to include the incident. On

10   January 25, Plaintiff returned to work. He did not lose any salary

11   as a result of the withdrawn one-day suspension.

12        Prior to and throughout the time period in question, guard Angel

13   Luis, one of Defendant's employees, would say to Plaintiff "why don't

14   you leave work and let someone younger work" and "you have already

15   worked a lot." Plaintiff's supervisor, Berríos, was never present

16   when Angel Luis made the comments. Also, some of Defendant's

17   employees and Plaintiff's supervisor would call Plaintiff a "jockey."

18        On January 23, 2008, Plaintiff filed the present complaint in

19   federal district court, alleging that (1) Defendant denied him the

20   position of salesman for route 446 because of his age, in violation

21   of the ADEA and Law 100; (2) Defendant suspended him in retaliation

22   for filing a charge before the EEOC; and (3) Defendant failed to pay

23   him for vacation leave, as required under Puerto Rico law. (Docket

24   No. 1.) On April 20, 2009, Defendant moved for summary judgment.

Civil No. 08-1097 (JAF)                                            -6-

1    (Docket No. 21.) Plaintiff opposed on May 12, 2009 (Docket No. 32),

2    and Defendant replied on May 28, 2009 (Docket No. 46).

3                                    II.

4              **Standard For Summary Judgment Under Rule 56(c)**

5         We grant a motion for summary judgment "if the pleadings, the

6    discovery and disclosure materials on file, and any affidavits show

7    that there is no genuine issue as to any material fact and the movant

8    is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

9    A factual dispute is "genuine" if it could be resolved in favor of

10   either party, and "material" if it potentially affects the outcome

11   of the case. Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19

12   (1st Cir. 2004).

13        The movant carries the burden of establishing that there is no

14   genuine issue as to any material fact; however, the burden "may be

15   discharged by showing that there is an absence of evidence to support

16   the non-movant's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325,

17   331 (1986). The burden has two components: (1) an initial burden of

18   production, which shifts to the non-movant if satisfied by the

19   movant; and (2) an ultimate burden of persuasion, which always

20   remains on the movant. Id. at 331.

21        In evaluating a motion for summary judgment, we view the record

22   in the light most favorable to the non-movant. Adickes v. S.H. Kress

23   & Co., 398 U.S. 144, 157 (1970). However, the non-movant "may not

24   rely merely on allegations or denials in its own pleading; rather,

Civil No. 08-1097 (JAF)                                           -7-

1    its response must . . . set out specific facts showing a genuine

2    issue for trial." Fed. R. Civ. P. 56(e)(2).

3                                    **III.**

4                                 **Analysis**

5         We address in turn Defendant's motion for summary judgment on

6    Plaintiff's (1) ADEA and Law 100 claims; (2) retaliatory suspension

7    claim; and (3) failure to pay vacation leave claim.

8    **A.   ADEA and Law No. 100**

9         Plaintiff asserts a disparate treatment claim under the ADEA and

10   a claim under Law 100, Puerto Rico's age discrimination statute.

11   (Docket Nos. 1, 32.) Defendant argues that we must grant summary

12   judgment on Plaintiff's ADEA claim because Plaintiff has failed to

13   establish a prima-facie case of age discrimination or demonstrate

14   that Defendant's neutral explanation for not promoting Plaintiff was

15   a pretext for age discrimination. (Docket No. 21.) Defendant further

16   argues that we must dismiss the Law 100 claims for the same reasons

17   as the ADEA claims. (Id.)

18   **1. ADEA**

19        The ADEA provides that it is unlawful for an employer "to fail

20   or refuse to hire or to discharge any individual . . . because of

21   such individual's age." 29 U.S.C. § 623(a)(1). Plaintiffs may use

22   direct or indirect evidence to prove a disparate treatment theory.

Civil No. 08-1097 (JAF)                                              -8-

1          **a. <u>Direct Evidence</u>**

2          Plaintiff asserts that when he verbally requested that Piñeiro

3     assign him to route 466, Piñeiro responded that he "would be denied

4     the position [of route 466 salesman] because he was too old."

5     (Docket No. 28-8). He argues that this constitutes direct evidence

6     of discrimination. (Docket No. 32.) Defendant counters that we should

7     discount Plaintiff's direct evidence because it is at odds with

8     Plaintiff's other testimony. (Docket No. 46.)

9          Where the plaintiff presents direct evidence of discrimination

10    in an employment discrimination case alleging disparate treatment,

11    the burden shifts to the employer, who must prove that it would have

12    reached the same decision without taking into account the protected

13    characteristic. <u>See</u> <u>Ayala-Gerena v. Bristol Myers-Squibb Co.</u>, 95 F.3d

14    86, 95-96 (1st Cir. 1996) (citing <u>Smith v. F.W. Morse & Co.</u>, 76 F.3d

15    413, 421 (1st Cir. 1996)). Consequently, <u>McDonnell Douglas Corp. v.</u>

16    <u>Green</u>, 411 U.S. 792 (1973), is inapplicable. <u>Trans World Airlines,</u>

17    <u>Inc. v. Thurston</u>, 469 U.S. 111, 121 (1985) (citing <u>Int'l Bhd. of</u>

18    <u>Teamsters v. United States</u>, 431 U.S. 324, 358 n.44 (1977)).

19         "Direct evidence is evidence which, in and of itself, shows a

20    discriminatory animus." <u>Jackson v. Harvard Univ.</u>, 900 F.2d 464, 467

21    (1st Cir. 1990). An admission by the employer that it explicitly

22    considered age in making the employment decision is direct evidence

23    of age discrimination. <u>Meléndez v. Autogermana, Inc.</u>, 606 F.Supp.2d

24    189, 195 (D.P.R. 2009) (citing <u>Smith</u>, 76 F.3d at 421).

Civil No. 08-1097 (JAF)                                           -9-

1        "[A] party cannot create a genuine issue of fact sufficient to
2    survive summary judgment simply by contradicting his or her own
3    previous sworn statement . . . without explaining the contradiction
4    or attempting to resolve the disparity." Cleveland v. Policy Mgmt.
5    Sys. Corp., 526 U.S. 795, 806-07 (1999) (collecting cases); see
6    Colantuoni v. Alfred Calcagni & Sons, Inc., 44 F.3d 1, 4-5 (1st Cir.
7    1994) (citations omitted). In García v. Bristol Myers Squibb Co., for
8    example, the First Circuit discredited allegations made by the
9    plaintiff for the first time in an unsworn affidavit, as she had
10   stated during her prior deposition that she had declared every
11   incident of disparate treatment she was aware of. 535 F.3d 23, 33 n.5
12   (1st Cir. 2008).

13       Defendant argues that we should disregard Plaintiff's direct
14   evidence of discrimination, that Piñeiro told Plaintiff that he
15   "would be denied the position [of route 466 salesman] because he was
16   too old" (Docket No. 32), because it is at odds with Plaintiff's
17   other testimony. (Docket No. 46.) Plaintiff first mentioned Piñeiro's
18   comment on September 4, 2008, in the Answer to Interrogatory and
19   subsequently included it in his unsworn affidavit of May 11, 2009.
20   (Docket No. 46.) The unsworn affidavit came in response to
21   Defendant's motion for summary judgment. (Docket No. 28-8.) The
22   statement was notably absent from Plaintiff's allegations in the
23   charge of discrimination before the EEOC (Docket No. 22-15), the
24   complaint (Docket No. 1), and the initial disclosures (Docket

Civil No. 08-1097 (JAF)                                              -10-

1    No. 46). Also, when Plaintiff was asked during his deposition about

2    the meeting with Piñeiro, he once again failed to mention the

3    statement, despite being asked repeatedly whether he was describing

4    the conversation in full. (Id.)

5         Given the inconsistencies between the unsworn affidavit and the

6    deposition, and Plaintiff's failure to provide an adequate

7    explanation for the disparity, we do not credit the statement made

8    in Plaintiff's unsworn affidavit. See Policy Mgmt. Sys. Corp, 526

9    U.S. at 806-07; García, 535 F.3d at 33 n.5. Therefore, there is no

10   direct evidence of discrimination in this case.

11            **b. Circumstantial Evidence**

12        Plaintiff also presents circumstantial evidence to prove his

13   claim of age-based discrimination. (Docket Nos. 1, 28, 32, 54.)

14   Defendant argues that this evidence does not create a prima-facie

15   case and does not rebut Defendant's stated non-discriminatory motive.

16   (Docket Nos. 21, 22, 37, 45, 46, 56.)

17        When the Plaintiff lacks direct evidence of age discrimination,

18   we follow the three-step process outlined in McDonnell Douglas, 411

19   U.S. 792. First, the plaintiff must establish a prima-facie case of

20   age discrimination. Torrech-Hernández v. Gen. Elec. Co., 519 F.3d 41,

21   48 (1st Cir. 2008). To establish a prima-facie case of disparate

22   treatment under the ADEA in a failure-to-promote claim, a plaintiff

23   must show that (1) he was at least forty years old at the time of the

24   adverse employment action; (2) he was qualified for the position;

1    (3) he was denied the promotion; and (4) the position was filled by

2    someone younger with similar qualifications. Arroyo-Audifred v.

3    Verizon Wireless, Inc., 527 F.3d 215, 219 (1st Cir. 2008) (citing

4    Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991)).

5         Next, the burden shifts to the defendant to present a

6    legitimate, nondiscriminatory reason for the employment decision.

7    Id.  The defendant "need do no more than articulate a reason which,

8    on its face, would justify a conclusion that the plaintiff was [not

9    promoted] for a nondiscriminatory motive." Torrech-Hernández, 519

10   F.3d at 48 (quoting Dávila v. Corporación de P.R. Para La Difusión

11   Pública, 498 F.3d 9, 16 (1st Cir. 2007)).

12        The burden then shifts back to the plaintiff to demonstrate by

13   a preponderance of the evidence that the defendant's asserted reason

14   is a pretext for age discrimination. Id. This burden may be satisfied

15   through either direct or circumstantial evidence, including

16   derogatory comments, differential treatment in the workplace, and the

17   use of a younger replacement. Mesnick, 950 F.2d at 824 (citing

18   cases). Inexplicable deviations from established company procedures

19   or practices can also be considered evidence of pretext. See Brennan

20   v. GTE Gov't Sys. Corp., 150 F.3d 21, 29 (1st Cir. 1998) (citing

21   Lattimore v. Polaroid Corp., 99 F.3d 456, 466-67 (1st Cir. 1996))

22   (finding that a one-time  deviation from a company's retention

23   procedure is "directly relevant" to the pretext determination).

24   However, statements by nondecisionmakers "normally are insufficient,

Civil No. 08-1097 (JAF)                                                -12-

1    standing alone, to establish either pretext or the requisite

2    discriminatory animus." González v. El Día, Inc., 304 F.3d 63, 69

3    (1st Cir. 2002).

4         Here, the evidence shows that Plaintiff is within the protected

5    class, as he was over forty years old when he requested route 446,

6    and Plaintiff was not promoted to the position of salesman. He was

7    at least arguably qualified for the position he was seeking, as he

8    was from the Bayamón area and was already working as a substitute

9    salesman for Defendant. Furthermore, the position was filled by

10   Concepción, a younger substitute salesman. Therefore, we assume that

11   Plaintiff satisfies the prima-facie case requirement.

12        Defendant argues that Plaintiff has failed to rebut its

13   legitimate, nondiscriminatory explanation for awarding Concepción the

14   route at issue. (Docket Nos. 45, 46.) Defendant asserts that it

15   awarded the route to Concepción because he was already familiar with

16   the route and it was essential to get a driver that could master the

17   route quickly. (Docket Nos. 21, 22, 37, 45.) Defendant also claims

18   that the position was filled by the time that Plaintiff applied for

19   it. (Docket Nos. 21, 22, 37, 45.) Because these reasons, on their

20   faces, would justify a conclusion that Plaintiff was denied the

21   position for a nondiscriminatory reason, the burden shifts to

22   Plaintiff to prove that this reason was pretextual. See Torrech-

23   Hernández, 519 F.3d at 48.

1      Plaintiff argues that Defendant's explanation is pretextual for

2 several reasons. (Docket Nos. 1, 32.) First, Plaintiff asserts that

3 he was sufficiently familiar with the route because he is a Bayamón

4 resident and could have quickly learned the route. (Docket Nos. 28-1,

5 32.) Plaintiff concedes that he did not know route 446 at the time

6 the position of salesman became vacant, but he states that it would

7 have taken him around eight working days to learn it. (Docket

8 No. 32.) Given Defendant's need to fill the position of salesman for

9 route 446 quickly, it is reasonable for Defendant to prefer

10 Concepción, especially given that Concepción needed no time to learn

11 the route.

12      Second, Plaintiff argues that he should have been given the

13 position of route 446 salesman solely because he had more seniority

14 than Concepción and was, therefore, better qualified. (Id.)

15 Nevertheless, Plaintiff admits in his deposition that seniority by

16 itself does not mean that an employee is better qualified. (Docket

17 No. 56-4.) He also concedes that the CBA does not provide a

18 preferential right over a vacant position based on seniority.

19 (Docket No. 28-1.) Consequently, Plaintiff's argument that he should

20 have been chosen to fill the vacant position solely based on

21 seniority is not sufficiently supported by the record.

22      Third, Plaintiff contends that Defendant never announced the

23 position of salesman for route 446 and that this is evidence of

1   discrimination. (Docket No. 32.) Plaintiff admits, however, that
2   Defendant had in the past failed to publish vacant positions on the
3   company's bulletin board (Docket No. 37-5) and that Plaintiff was
4   previously awarded a position as salesman without it being published
5   (Docket No. 37-7). Thus, although Defendant violated the CBA by
6   failing to post the vacancies (Docket No. 37-2), this failure is not
7   a strong indicator of pretext because the practice of not posting had
8   been carried out for some time before the events in question. See
9   Brennan, 150 F.3d at 29 (citations omitted).

10       Although Plaintiff's evidence, that he was sufficiently familiar
11  with route 446, had more seniority than Concepción, and the position
12  was never announced, might arguably constitute some evidence that
13  Defendant's reasons were pretextual, Plaintiff has failed to prove
14  that the Defendant was motivated by a discriminatory animus. See
15  Velázquez-Fernández v. NCE Foods, Inc., 476 F.3d 6, 11 (1st Cir.
16  2007) (citing Woodman v. Haemonetics Corp., 51 F.3d 1087, 1091-92
17  (1st Cir. 1995)). Plaintiff argues that several workplace remarks
18  demonstrate an age-based animus. The record, however, does not
19  support this contention. For example, Plaintiff asserts that
20  Piñeiro's remark, that Plaintiff "would be denied the position [of
21  route 466 salesman] because he was too old," is indicative of
22  Defendant's discriminatory animus. (Docket No. 32.) As discussed
23  above, we do not credit this statement. All other remarks were either
24  said by employees that did not have decision-making power over

Civil No. 08-1097 (JAF)                                          -15-

1    Plaintiff or are ambiguous as to whether they are discriminatory in

2    nature.[2] (Docket No. 28.) First, Plaintiff admits that the comments

3    "why don't you leave work and let someone younger work" and "you have

4    already worked a lot" were made by guard Angel Luis, who has no

5    supervisory power over Plaintiff. (Docket Nos. 21, 22, 28-1.)

6    Plaintiff's supervisor, Berríos, was never present when the comments

7    were made. (Docket Nos. 21, 28-1, 37-7.) Therefore, these comments

8    do not establish pretext. See González, 304 F.3d at 69. Second,

9    Plaintiff claims that his supervisor and other employees called him

10   a "jockey" to his supervisor. (Docket No. 1.) According to Plaintiff,

11   this means that they were referring to him as an independent

12   contractor. (Docket Nos. 21, 22, 28-1.) It is unclear how this

13   alleged remark demonstrates age-based animus.

14       As there is no evidence that the reasons offered by Defendant

15   are a pretext for age-based discrimination, Plaintiff has not shown

16   the existence of an issue of fact as to whether, but for age bias,

17   he would have been promoted.

_____

[2]In his charge before the EEOC (Docket No. 22-15) and Complaint, (Docket No. 1), Plaintiff claims that supervisor Angel Otero asked him "Is this your last haircut?" Although Plaintiff testified that the remark was made on June 6, 2006 (Docket No. 37-7), the record clearly shows that Otero died on June 22, 1999 (Docket Nos. 22-2, 37-12). Therefore, we do not credit these remarks.

1    **2.   Law No. 100**

2        Because we dismiss Plaintiff's ADEA claim, we dismiss his Law

3    100 claim. See Dávila, 498 F.3d at 18 (stating that "[o]n the merits,

4    age discrimination claims asserted under the ADEA and under Law 100

5    are coterminous") (citing González, 304 F.3d at 73).

6        Consequently, we grant Defendant's motion for summary judgment

7    with respect to the ADEA claim and the Law 100 claim.

8    **B.   ADEA Retaliation**

9        Plaintiff claims that Defendant retaliated against him by

10   suspending him and filing charges because he filed a charge before

11   the EEOC. (Docket Nos. 1, 32.) Defendant counters that summary

12   judgment should be granted because the suspension was caused by a

13   misunderstanding, it was withdrawn, and Plaintiff never lost any

14   income as a result. (Docket No. 21.)

15       The ADEA provides that it is unlawful for an employer to

16   discriminate against an employee for opposing a practice made

17   unlawful by the ADEA, or for making a charge, testifying, assisting,

18   or participating in proceedings under the ADEA. 29 U.S.C. § 623(d).

19       When there is only circumstantial evidence of discriminatory

20   retaliation, we again apply the burden-shifting framework in

21   McDonnell Douglas. Mesnick, 950 F.2d at 827. "A plaintiff must make

22   a prima facie showing of retaliation by presenting evidence that

23   (1) he engaged in protected conduct, (2) he was thereafter subjected

1    to an adverse employment action, and (3) a causal connection existed

2    between the protected conduct and the adverse action." <u>Che v. Mass.

3    Bay Transp. Auth.</u>, 342 F.3d 31, 38 (1st Cir. 2003) (citing <u>Hernández-

4    Torres v. Intercontinental Trading, Inc.</u>, 158 F.3d 43, 47 (1st Cir.

5    1998)). The burden then shifts to the defendant, who must articulate

6    a legitimate, non-retaliatory reason for the adverse employment

7    decision. <u>Id.</u> at 39 (citing <u>Bishop v. Bell Atl. Corp.</u>, 299 F.3d 53,

8    58 (1st Cir. 2002)). Finally, if such a reason is offered, the burden

9    shifts back to the plaintiff, who has to show that the employer's

10   retaliatory action was the result of discriminatory animus. <u>Id.</u>

11   (citing <u>Feliciano de la Cruz v. El Conquistador Resort & Country

12   Club</u>, 218 F.3d 1, 6 (1st Cir. 2000)).

13        A plaintiff's failure to prevail in his own ADEA discrimination

14   suit will not preclude a retaliation cause of action under the ADEA.

15   <u>Machin v. Leo Burnett, Inc.</u>, 376 F.Supp.2d 188, 206 (D.P.R. 2005)

16   (citing <u>Soileau v. Guilford of Me., Inc.</u>, 105 F.3d 12, 16 (1st Cir.

17   1997)). "It is enough that the plaintiff had a reasonable, good-faith

18   belief that a violation occurred; that he acted on it; that the

19   employer knew of the plaintiff's conduct; and that the employer

20   lashed out in consequence of it." <u>Mesnick</u>, 950 F.2d at 827.

21        Here, Plaintiff's filing of a charge before the EEOC constituted

22   protected conduct. <u>See</u> 29 U.S.C. § 623(d). However, even assuming

23   that the withdrawn and paid suspension was an adverse employment

24   action, Plaintiff has failed to demonstrate that there was a causal

1    connection between the filing of the charge before the EEOC and the

2    suspension and filing of criminal charges. See Che, 342 F.3d at 38.

3    Plaintiff's Complaint alleges that the letter that Berríos sent

4    Plaintiff on January 22, 2007 (Docket No. 37-11) caused Plaintiff's

5    suspension. (Docket No. 1.) However, nothing in the letter relates

6    to Plaintiff's EEOC charge. Likewise, Plaintiff has failed to provide

7    any evidence that his conversation with Piñeiro and Berríos a day

8    later bore any relationship to his EEOC charge.

9         As there is no evidence that the withdrawn and paid suspension

10   was motivated by a discriminatory animus, Plaintiff has not shown

11   that a causal connection existed between the filing of his EEOC

12   charge and the adverse action. See Che, 342 F.3d at 38 (citing

13   Hernández-Torres, 158 F.3d at 47).

14        Consequently, we grant Defendant's motion for summary judgment

15   with respect to the ADEA retaliation claim.

16   **C.   <u>Failure to Pay Vacation Leave</u>**

17        Plaintiff asserts a wage claim under Puerto Rico law. (Docket

18   Nos. 1, 32.) Defendant counters that we must grant summary judgment

19   because Plaintiff has failed to exhaust the grievance procedure in

20   the CBA. (Docket Nos. 21, 46.) We address in turn Plaintiff's wage

21   claim as premised on (1) a right based on the CBA; and (2) a right

22   based on Puerto Rico law.

Civil No. 08-1097 (JAF)                                              -19-

1          **1.    Right Based on the CBA**

2          Defendant argues that Plaintiff failed to exhaust the remedies

3   available under the CBA.³

4          Section 301 of the Labor Management Relations Act provides that

5   suits for violation of contracts between an employer and a union may

6   be brought in any district court that has jurisdiction over the

7   parties. 29 U.S.C. § 185(a). Thus, if the cause of action involves

8   a right or duty that exists under a CBA, the state claim may be

9   preempted. Fant v. New Eng. Power Serv. Co., 239 F.3d 8, 14 (1st Cir.

10  2001).

11         When a collective bargaining contract provides grievance and

12  arbitration procedures, an employee must ordinarily exhaust these

13  procedures before bringing his claim to court. Local 1575 Int'l

14  Longshoremen's Ass'n AFL-CIO v. Horizon Lines of Puerto Rico, Inc.,

15  553 F.Supp.2d 101, 105 (D.P.R. 2008) (collecting cases). This rule

16  is only inapplicable when the employer's conduct amounted to a

17  repudiation of the contract's remedial procedures, when the union

18  wrongfully refused to process the grievance, or when following the

19  contractual procedures would be futile. Id. at 105-06 (citing Vaca

20  v. Sipes, 386 U.S. 171, 185 (1967); Glover v. St. Louis-San Francisco

21  Ry. Co., 393 U.S. 324, 330 (1969)). Moreover, there is a presumption

---

³Defendant assumes that Plaintiff made a failure to announce a vacancy claim. However, we do not interpret Plaintiff's complaint as stating such a claim. (See Docket No. 1.) To the extent that it does, the analysis under this section would be equally applicable and the failure to announce a vacancy claim would be dismissed.

that disputes should be resolved through arbitration, particularly where the arbitration clause is broad. See AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986).

To the extent that Plaintiff's unpaid vacation leave claim is based on rights created by the CBA, that claim is preempted. See Fant, 239 F.3d at 14. The CBA at issue in this case provides that all claims and grievances related to the administration or interpretation of the CBA, with the exception of discrimination claims, must be brought in accordance with the procedure established by the document. (Docket No. 37-2.) As the CBA has sections corresponding to the calculation of vacation leave (id.), the claim is covered by the CBA. Plaintiff has failed to explain why the dispute should not be governed by the procedure established in the CBA, see AT&T Techs., 475 U.S. at 650, or produce evidence showing that he exhausted the grievance and arbitration procedure. Also, none of the exceptions mentioned in Local 1575 are present in this case. See 553 F.Supp.2d at 105-06.

Consequently, because Plaintiff failed to exhaust the grievance procedure established in the CBA, we grant Defendant's motion for summary judgment with respect to this claim. See Local 1575, 553 F.Supp.2d at 105.

1      **2.   <u>Right Based on Puerto Rico Law</u>**

2          Plaintiff contends that Defendant has denied him his right to

3      paid vacations, as established by Puerto Rico law. (Docket Nos. 1,

4      32.) Defendant does not address the claim under Puerto Rico law.

5          In some cases, when a party alleges only a violation of a state

6      law without asserting a breach of the CBA, "the action need not be

7      preempted by federal law" because "the rights created by the state

8      law are independent, non-negotiable and not inextricably intertwined

9      with the collective bargaining agreement." <u>Fant</u>, 239 F.3d at 15 n.7

10     (internal quotation omitted); <u>see, e.g.</u>, <u>Welch v. Gen'l Motors Corp.</u>,

11     922 F.2d 287, 290 (6th Cir. 1990) (holding that employee could assert

12     independent state rights established by the Michigan Handicapper's

13     Civil Rights Act, even though the CBA provided a remedy for

14     discrimination).

15         Under Puerto Rico Law No. 180, of July 27, 1998, employees

16     "accrue vacation leave at a rate of one and one quarter (1 1/4)

17     days each month," as long as they have worked at least one hundred

18     and fifteen hours a month. 29 L.P.R.A. § 250(d)(a) (2001). To the

19     extent that Plaintiff was asserting an unpaid vacation leave claim

20     under Puerto Rico Law No. 180, because we grant summary judgment for

21     Defendant on all federal claims, we decline to exercise supplemental

22     jurisdiction over this associated Commonwealth claim. See <u>Rivera v.</u>

23     <u>Murphy</u>, 979 F.2d 259, 264 (1st Cir. 1992) (quoting <u>Cullen v.</u>

Civil No. 08-1097 (JAF)                                        -22-

1    <u>Mattaliano</u>, 690 F. Supp. 93, 99 (D. Mass. 1988)); <u>see also</u> 28 U.S.C.

2    § 1367(c)(3).

3                                     **IV.**

4                                 <u>**Conclusion**</u>

5         In accordance with the foregoing, we hereby **GRANT** Defendant's

6    motion for summary judgment, (Docket No. 21), and **DISMISS** Plaintiff's

7    ADEA, retaliatory suspension, and failure to pay vacation leave under

8    the CBA claims **WITH PREJUDICE**. We **DISMISS** Plaintiff's Puerto Rico

9    claims **WITHOUT PREJUDICE** of state court litigation.

10        **IT IS SO ORDERED.**

11        San Juan, Puerto Rico, this 10th day of July, 2009.

12                                   s/José Antonio Fusté
13                                   JOSE ANTONIO FUSTE
14                                   Chief U.S. District Judge